IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JEFFREY HUBBARD,                    )
                                    )
                Petitioner,         )
                                    )
                                    )        CIV-08-28-M
v.                                  )
                                    )
ERIC FRANKLIN, Warden,              )
                                    )
                Respondent.         )

REPORT  AND  RECOMMENDATION

        Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the conviction for

Murder in the First Degree entered in the District Court of Oklahoma County, Case No. CF-

2002-4527, in a jury trial.[1]  Respondent has responded to the Petition and filed the relevant

state court records, including a transcript of Petitioner's jury trial (hereinafter "TR___"), and

Petitioner has filed a reply. The matter has been referred to the undersigned Magistrate Judge

---

[1]Although Petitioner states that he is also challenging his conviction for Possession of a
Firearm After Former Conviction of a Felony entered in Case No. CF-2002-4527, Petitioner entered
a plea of guilty to this charge, and he does not allege constitutional claims directed to this plea-based
conviction.  Rather, all of Petitioner's habeas claims relate solely to the jury trial which resulted in
his first degree murder conviction.  Therefore, the Petition is construed to assert federal claims only
as to the Petitioner's first degree murder conviction.

for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that the Petition be denied.

I. Background

      Petitioner was charged in the District Court of Oklahoma County in a two-count information with Murder in the First Degree  and Possession of a Firearm After Former Conviction of a Felony.  The information alleged that Petitioner shot the victim, Billie Long, in Oklahoma City on August 14, 2002, and that Petitioner possessed a firearm after multiple prior felony convictions. A jury trial on the charges was conducted on February 23-26, 2004. The prosecution presented eleven witnesses in its case in chief.  After the prosecution rested, Petitioner entered a "blind" guilty plea to the charge of Possession of a Firearm After Former Conviction of a Felony.  Petitioner thereafter testified in his defense and presented a character witness.  The prosecution presented a rebuttal witness, and closing arguments and instructions were presented to the jury, including instructions for the lesser-included offense of first degree heat-of-passion manslaughter.  The jury returned a verdict of guilty on the first degree murder charge and recommended a sentence of life imprisonment.  On April 20, 2004, Petitioner was sentenced for the murder conviction to life imprisonment, and he was sentenced to a 30-year term of imprisonment for the felony firearm possession conviction.

      In Petitioner's direct appeal, Petitioner asserted that insufficient evidence was presented at trial to support the murder conviction, that improper cross-examination deprived him of a fair trial, that the prosecutor's closing argument constituted misconduct that denied him a fair trial, that jury instructions with respect to Petitioner's defense of self-defense were

inadequate, and that the accumulation of errors deprived Petitioner of due process. Response, Ex. 1 (Brief of Appellant).  The State responded in opposition to each of these claims. Response, Ex. 2 (Brief of Appellee).  On April 5, 2006, the Oklahoma Court of Criminal Appeals ("OCCA") issued a summary opinion in which the court affirmed Petitioner's convictions. Response, Ex. 4. The OCCA subsequently granted Petitioner's petition for rehearing in order to address Petitioner's motion for a new trial based on newly discovered evidence. Response, Exs. 5, 6.  In an order entered May 17, 2006, the OCCA concluded that the new evidence proffered by Petitioner was immaterial to Petitioner's defense and created no reasonable probability of a different outcome when considered with the evidence presented at Petitioner's trial. Response, Ex. 6.  Accordingly, the OCCA affirmed the judgment and sentence entered against Petitioner in Case No. CF-2002-4527.

Petitioner subsequently filed an application for post-conviction relief in the District Court of Oklahoma County, in Case No. CF-2002-4527.  The district court denied the application, and Petitioner appealed the decision.  Response, Ex. 7.  In an order entered November 5, 2007, the OCCA affirmed the district court's decision.  The court found that Petitioner had asserted (1) he was denied effective assistance of trial counsel, (2) the OCCA's ruling in Anderson v. State, 130 P.3d 273 (Okla. Crim. App. 2006), constituted an intervening change in law entitling Petitioner to relief, (3) the police failed to preserve crime scene evidence which deprived Petitioner of a fair trial, and (4) the accumulation of the foregoing errors deprived him of a fair trial.  The OCCA found that Petitioner's post-conviction claims were procedurally barred from review because of his failure to raise the

claims in his direct appeal.   Response, Ex. 8.   The court also rejected the merits of Petitioner's claim that the OCCA's decision in <u>Anderson</u>, <u>supra</u>, constituted an intervening change in the law.   The court noted that in <u>Anderson</u> the court found that its decision "did not constitute a substantive change in the law, and that failure to provide the 85 % instruction in cases decided before <u>Anderson</u> would not constitute grounds for reversal." Response, Ex. 8.

II. <u>Petitioner's Claims and Respondent's Response</u>

Petitioner now seeks federal habeas relief concerning his first degree murder conviction in Case No. CF-2002-4527.   In grounds one through six, Petitioner raises the same claims he asserted in his direct appeal.   He contends in ground one that the evidence was not sufficient for the jury to find him guilty of Murder in the First Degree beyond a reasonable doubt.   In ground two, Petitioner contends that improper cross-examination of Petitioner denied him a fair trial.   In ground three, Petitioner contends that the prosecutor's closing argument "impermissibly burdened [Petitioner's] right to be present at trial and to testify in his own behalf by inviting the jury to draw a baseless inference that [Petitioner] concocted his testimony to fit the testimony presented by the state." In his fourth ground for habeas relief, Petitioner contends that the jury instructions presented at his trial did not adequately convey his theory of self-defense.   In grounds five and ten, Petitioner asserts that cumulative errors denied him a fair trial.  In ground six, Petitioner contends that newly discovered evidence warrants a new trial.   In ground seven, Petitioner asserts that the trial court erred by not instructing the jury that Petitioner would be required to serve 85 % of his sentence

before being eligible for parole under Oklahoma law.  In his eighth ground, Petitioner

contends that he was denied effective assistance of trial counsel because of his counsel's

"failure to object to issues that could have been preserved for appeal" and by failing to

request a jury instruction regarding the Oklahoma law requiring a defendant serving a

sentence for murder to serve 85 % of his sentence before being eligible for parole.  In ground

nine, Petitioner contends that his due process right to a fair trial was violated because

"evidence that was vital to the Petitioner's case was never secured and as a result of the

evidence not being secured it was stolen by bystanders with no business around the Crime

Scene."

　　　　Respondent contends that Petitioner is not entitled to habeas relief with respect to the

issues raised in grounds one through six of the Petition and that Petitioner's state court

procedural default with respect to his remaining claims bars federal habeas review of those

claims.

III. <u>Standard of Review</u>

　　　　Because the claims raised by Petitioner in grounds one through six were adjudicated

on their merits in state court, the standard for reviewing Petitioner's claims is prescribed by

the Antiterrorism and Effective Death Penalty Act ("AEDPA").  With respect to legal issues

raised in the Petition, habeas relief may be awarded only if the appellate court's ruling was

"contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Under this

standard, judicial review is directed to the result of the state appellate court's decision, not

its reasoning. <u>Saiz v. Ortiz</u>, 392 F.3d 1166, 1176 (10th Cir. 2004), <u>cert. denied</u>, 545 U.S. 1146 (2005). Federal courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)). If there is no clearly established federal law in Supreme Court cases involving facts that are closely related or similar to those in the case being reviewed, the court need not assess whether the state court's holding was "contrary to" or an "unreasonable application" of established federal law. <u>House v. Hatch</u>, __ F.3d __, 2008 WL 1947027, * 4-5 (10th Cir. 2008)(interpreting <u>Carey v. Musladin</u>, __ U.S. __ 127 S. Ct. 649, 654 (2006). Where the Supreme Court's "cases give no clear answer to the question presented, ...., it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law," and habeas "relief is unauthorized" under the explicit language of 28 U.S.C. § 2254(d)(1). <u>Wright v. Van Patten</u>, __ U.S. __, 128 S. Ct. 743, 747 (2008)(internal quotation and citation omitted).

If "the threshold question as to the existence of clearly established federal law" is answered affirmatively, then the reviewing court must determine whether the state court decision is either contrary to or an unreasonable application of that law. <u>House</u>, __ F. 3d at __, 2008 WL 1947027, at * 5. A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 405-406, 413. The "state court

decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(*per curiam*). "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 8 (2002)(*per curiam*)).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson,  542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted).

As to any factual issues raised in the Petition, the court must determine whether the state appellate court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In this regard, AEDPA mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28

U.S.C. § 2254(e)(1).

III.   Sufficiency of the Evidence

Petitioner contends in his first ground for relief that insufficient evidence of his guilt with respect to the murder offense was presented to the jury.  Petitioner raised this issue in his direct appeal, and the OCCA rejected the claim in a summary opinion. Response, Ex.  4 (Hubbard v. State, No. F-2004-762 (Okla. Crim. App. Apr. 5, 2006)(unpublished op.).  The court concluded, without explanation, that there was "sufficient direct and circumstantial evidence from which any rational trier of fact could find the essential elements of the charged crime were proved beyond a reasonable doubt." Id., at 2.

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial concerning his murder conviction "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993).  For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson).  Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir.), cert. denied, 523 U.S. 1110 (1998).  In applying this standard, the court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence

as long as it is within the bounds of reason.'" <u>Messer</u>, 74 F.3d at 1013 (quoting <u>Grubbs v.</u> <u>Hannigan</u>, 982 F.2d 1483, 1487 (10th Cir. 1993)).

Although the OCCA did not cite the Supreme Court's decision in <u>Jackson</u> in support of its conclusion, the OCCA cited previous decisions in which the OCCA held that <u>Jackson</u> provides the appropriate standard for resolving sufficiency of the evidence claims. <u>See</u> <u>Easlick v. State</u>, 90 P.3d 556, 559 (Okla. Crim. App. 2004); <u>Spuehler v. State</u>, 709 P.2d 202, 203-204 (Okla. Crim. App. 1985).

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. <u>Jackson</u>, 443 U.S. at 309, 324 n.16. Oklahoma law provides that first-degree murder is the unlawful killing of a human being with malice aforethought. Okla. Stat. tit. 21, § 701.7(A). "Premeditated design sufficient to establish malice aforethought may be inferred from the fact of killing alone, unless the facts and circumstances raise a reasonable doubt as to whether such design existed." <u>Hancock v. State</u>, 155 P.3d 796, 812 (10th Cir. 2007). "The unlawful design to effect death, by which a homicide constitutes murder, may be formed instantly before committing the act by which it is carried into execution." <u>Id.</u> Additionally, the prosecution must prove, beyond a reasonable doubt, that the offender did not act in self-defense. <u>Id.</u>

Petitioner asserted in his direct appeal, and he makes the same argument herein by simply photocopying a portion of his appellate brief, that the evidence presented at his trial was insufficient because the prosecution failed to prove he did not act in self-defense. Petitioner relies on his own testimony at the trial that he only shot the victim because he

believed the victim was about to pull a gun during an argument between Petitioner and the victim. Petitioner also relies on the testimony of a witness, Ladon Russell, whom Petitioner contends corroborated Petitioner's version of the events leading to the victim's death. Petitioner also asserts that the physical evidence presented at the trial arguably showed he acted in self-defense based on the medical examiner's testimony concerning the entry wounds on the victim.

Having carefully reviewed the transcript of Petitioner's trial, the transcript shows there was more than sufficient evidence presented at Petitioner's trial for the jury to have found him guilty of first degree murder beyond a reasonable doubt. A witness to the crime, Ms. McCain, testified that an individual she did not know started an argument with Billie Long, that the individual pulled a gun from his pants, that Long was shot by the individual as Long turned to walk away from the individual, and that Long was shot again by the individual after Long had turned "completely around where his back was facing" the shooter. (TR vol. II, at 131, 144-146). She also testified she heard the shooter say, "This is for your [expletive] brother," after he shot Long. (TR vol. II, 146-147). She further testified there was no weapon in Long's hands, and that the individual who shot Long walked away casually after the shooting. (TR vol. II, at 147-149).

Another witness, Mr. Knight, testified that he saw Petitioner, who he knew as "Jethro," and Billie Long arguing, that Petitioner initiated the argument, that he heard Long say to Petitioner, "Man, get away from me," that he saw Long push Petitioner off of him and "turn[ ] his back" from Petitioner to "start to walk away from" Petitioner, that Long did not

10

have anything in his hands, and that Mr. Knight then heard two shots. (TR vol. II, at 204-207).  Mr. Knight testified that Petitioner had a gun, that Petitioner took off his shirt and started running to his car, and that he heard Petitioner say, "Tell them that," after the shooting. (TR vol. II, at 205-208, 215). Mr. Knight testified that Long did not reach for his pocket, Long did not have anything in his hands, and Long did not say anything about having "heat" or a weapon. (TR vol. II, at 207-208).

Another witness, Mr. Houston, testified he saw a "skinny man" arguing with a "fat man." (TR vol. III, at 12-14).  He testified the "fat man" had turned around and was trying to run away from the "skinny man" when the "fat man" got shot by the "skinny man," and that the victim's back was to the shooter when the victim was shot.  (TR vol. III, at 14-16). He testified there were no weapons in the victim's hands, and he testified that he did not see the victim reach as if trying to get a weapon or hear the victim threaten the shooter or hear the victim state that he had "heat." (TR vol. III, at 16-17, 21-22).  Another witness, Ms. Carter, testified that she saw an individual she knew as Rerun, arguing with another individual, that she saw Rerun "backing up" to his car and the other individual moving toward Rerun, that Rerun was doing "nothing," that she heard Rerun telling the other individual that he did not want any confusion, and that she did not see Rerun with a weapon or see Rerun reaching for any type of weapon. (TR vol. III, at 32-35).  Ms. Carter testified that she heard two shots, that after hearing the first shot she saw a gun in the shooter's hands, and that she heard the shooter say, "You're never supposed to turn your back on somebody," before he shot Rerun. (TR vol. III, at 37-40).

A crime scene investigator testified as to the items of evidence recovered from the scene of the shooting. (TR vol. III, at 60-89). No weapon other than a small, closed pocket knife was recovered by law enforcement, and the pocket knife did not contain identifiable fingerprints. (TR vol. III, at 86-87, 96).

A medical examiner testified that the cause of Long's death was a gunshot wound to the chest with a contributing pulmonary embolism, or blood clot. The medical examiner testified that Long sustained two separate entry wounds during the shooting, that one of the entry wounds was in his right arm near the armpit, and that the other entry wound was in the right side of his back. (TR vol. III, at 102, 103, 105-106, 116, 121-122). The examiner testified that a bullet was recovered from Long's right lung cavity area. (TR vol. III, at 116). The examiner postulated that there was at a minimum one bullet and at a maximum two bullets which caused the death of the victim, and that he could not be sure whether one or two bullets caused the victim's death. (TR vol. III, at 121-122).

An Oklahoma City police officer testified that when he arrived at the scene of the shooting, the victim, Mr. Long, was lying on his stomach and was still alive. (TR vol. III, at 149). When the officer asked Long who shot him, Long responded, "Jethro," and told the officer that "Jethro" was not the shooter's real name. (TR vol. III, at 149-151). The officer testified there was no weapon near Long and no weapon on the individuals standing near Long. (TR vol. III, at 150). When the shooter was identified as Petitioner through radio contact with other officers, the officer testified that Long "raised his head and said, quote, 'That's him. That's Jethro...That's the dude that shot me.'" (TR vol. III, at 151-152).

12

Another officer who was one of the first law enforcement officers to arrive at the scene of the homicide testified that he saw no weapons at the scene. (TR vol. III, at 161).  The officer testified that Long told him "Jethro Hubbard" had shot him, that Long stated he "had turned to run in the opposite direction when he was shot," that Long also stated Petitioner shot him "over a fight that had occurred a couple of weeks before involving [Long's] brother," and that Long died while the officer was talking to him. (TR vol. III, at 165-166).

There was testimony from a prosecution witness, Ladon Russell, that he went to the Eldorado Club with Petitioner, that Petitioner and Long, who he testified was also known as Rerun, were arguing in front of the club, that he heard Long tell Petitioner that Long had "heat" and would not fight Petitioner, and that he saw Long with "his hand in his back pocket" at the time of the shooting.  (TR vol. II, at 168-169, 171, 172, 174-175).  Mr. Russell testified that after the shooting he ran to Petitioner's car and left with Petitioner. (TR vol. II, at 175-176).  Mr. Russell further testified that he had smoked crack cocaine, ingested PCP, and drank at least a gallon of wine prior to the shooting, that his memory was affected because he was "high" and "messed up" at the time of the shooting, and that he "really didn't know" what happened at the time of the shooting because he was "so doped up and drugged up." (TR vol. II, at 166-167, 184).  Mr. Russell, however, testified that he saw Petitioner shoot Long in the arm, that he saw Long then "twist" around or turn around, and that Petitioner then shot Long again in the back. (TR vol. II, at 174, 193). Mr. Russell testified he called the police the next day after the shooting because he learned they were looking for him, but he testified he did not remember telling the police that Petitioner said to Long, "take

this for your brother," right before Petitioner shot Long. (TR vol. II, at 176-178). Mr. Russell stated he did not remember making this statement  because he was "so drugged up" during the police interview. (TR vol. II, at 178).  A videotape of Mr. Russell's interview with police on the day after the shooting was played for the jury.  (TR vol. II, at 182).

Petitioner testified in his defense that he had been involved in a previous physical altercation with Long and Long's brother, Earl, and that Long initiated that altercation and hit Petitioner. (TR vol. IV, at 10-12).  Petitioner testified that on the night of the shooting he had a gun because he knew Long's brother was a gang member, he knew that Long had guns, and because he knew there would be "some problems" after the previous altercation. (TR vol. IV, at 13).  Petitioner testified that he was angry and wanted to fight Long but did not intend to shoot Long, and that he approached Long. (TR vol. IV, at 14-15).  Petitioner testified that Long stated he "had heat," that Long "had his hand in his back pocket," and that he believed Long had a gun and was threatening Petitioner's life. (TR vol. IV, at 16-18).  Petitioner admitted he shot Long twice and ran from the scene and did not turn himself in to law enforcement officials for about three weeks. (TR vol. IV, at 19, 44).  Petitioner also admitted that he had four prior felony convictions, including a conviction for possession of a firearm after former conviction of a felony. (TR 22).  Petitioner admitted that the gun he used to shoot Long was already loaded with six or seven rounds and was not on safety prior to the shooting and that he was carrying the gun where Long could see it. (TR vol. IV, at 26-27, 43-44).  Petitioner further admitted that he lied during a videotaped conversation with a news reporter in which Petitioner stated that Long initiated the conversation between Petitioner and

14

Long prior to the shooting. (TR vol. IV, at 49).  Petitioner admitted that he did not see a weapon in Long's hand prior to the shooting. (TR vol. IV, at 51).

Even though some of the evidence presented at Petitioner's trial was conflicting on the issue of self-defense, the jury obviously did not believe Petitioner's assertion that he shot Long in self-defense.  Petitioner admitted shooting the victim but asserted that he believed Long had a weapon and was threatening him.  This statement was contrary to the testimony of every witness except for Mr. Russell.  Multiple prosecution witnesses described statements made by Petitioner before and following the shooting that indicated he intentionally shot the victim.  Mr. Russell's testimony was impeached in several respects, including by his own prior inconsistent statements to police on the day after the shooting.  Mr. Russell also provided the jury with several reasons to discount the credibility of his testimony, including his admission that he was heavily intoxicated at the time of the shooting and his admission that he had gone to the scene of the shooting with Petitioner and then left the scene with Petitioner after the shooting.  Although, as Petitioner suggests, the medical examiner testified that the victim's gunshot wounds could possibly have resulted from one bullet, the medical examiner also testified that the victim had two entry wounds, one of which was in the right side of his back, and that the victim could have sustained two separate bullet wounds.  This testimony is consistent with the testimony of the eyewitnesses that Petitioner shot the victim twice and that he shot the victim the second time in the back while the victim was running or moving away from Petitioner.

The evidence presented at trial, including the testimony of prosecution witnesses that

they did not see a weapon in the victim's hands, the testimony of prosecution witnesses that Petitioner initiated the confrontation with the victim, Petitioner's admission that he took a loaded gun to the scene of the shooting, the medical examiner's testimony that the victim sustained a bullet wound in his back that caused his death, and the lack of any physical evidence indicating the victim had a weapon at the time of the shooting, provided more than sufficient evidence for the jury to find that the shooting did not occur in self-defense. The jury was instructed on the crimes of first degree murder and first degree manslaughter. (TR vol. IV, at 81). In view of the foregoing evidence presented at Petitioner's trial, a jury could easily have found Petitioner guilty of first degree murder beyond a reasonable doubt. Accordingly, the OCCA's decision was not contrary to or an unreasonable application of the governing Jackson standard, nor was the decision based on an unreasonable determination of the facts in light of the evidence presented at Petitioner's trial. Petitioner is therefore not entitled to habeas relief concerning this claim.

V. Prosecutorial Misconduct in Cross-Examination

In ground two of the Petition, Petitioner asserts[2] that the prosecutor's cross-examination of Petitioner deprived him of a fair trial. In this claim, Petitioner does not allege that the prosecutor's cross-examination directly affected a specific constitutional right. Under these circumstances, "[h]abeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair."

_____

[2]Petitioner has merely replicated the brief he filed in his direct appeal with respect to his claims for habeas relief in grounds one through six of the Petition.

Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974)), cert. denied, 526 U.S. 1052 (1999).  "To establish that a prosecutor's remarks were so inflammatory that they prejudiced substantial rights, a petitioner must overcome a high threshold: he or she must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that absent the remarks, the jury would not have imposed the [sentence]." Short v. Sirmons, 472 F.3d 1177, 1195 (10th Cir. 2006)( citing Berger v. United States, 295 U.S. 78, 89 (1935)), cert. denied, __ U.S. __, 128 S.Ct. 103 (2007).

In his direct appeal, Petitioner relied on state law and American Bar Association standards of prosecutorial ethics in asserting that the prosecutor's cross-examination of Petitioner was improper impeachment and "a gross distortion of the State's burden of proof." Response, Ex. 1, at 18-24.  Petitioner referred to cross-examination questions posed to Petitioner by the prosecutor following Petitioner's denial that he made any statements after he shot the victim. (TR vol. IV, at 44-46).  The prosecutor asked Petitioner whether the prosecution witness, Mr. Knight, was lying, and Petitioner stated that he was. (TR vol. IV, at 45).  Petitioner's defense counsel objected to this inquiry, and the trial court overruled the objection. (TR vol. IV, at 45).  The prosecutor then asked Petitioner if Mr. Russell was lying when he stated during his videotaped interview with police detectives that "right before you shot Billy Joe Long you said take that for your brother," and Petitioner responded that Mr. Russell was lying. (TR vol. IV, at 46).  The prosecutor then asked Petitioner if Ms. McCain was lying when she testified she "heard almost the exact same thing," and Petitioner

17

responded that she was. (TR vol. IV, at 46).  The prosecutor asked Petitioner whether Mr.

Russell was lying about the victim saying he had "heat" and about the victim having his hand

in his pocket, and Petitioner responded that Mr. Russell was not lying about these facts

although he admitted Mr. Russell lied "about some of it...." (TR vol. IV, at 46).

The OCCA rejected this claim, finding that no "reversible error" occurred in the

prosecutor's cross-examination of Petitioner. Response, Ex. 4, at 2.  In Davis v. Alaska, 415

U.S. 308 (1974), the Supreme Court stated that "[c]ross-examination is the principal means

by which the believability of a witness and the truth of his testimony are tested.  Subject

always to the broad discretion of a trial judge to preclude repetitive and unduly harassing

interrogation, the cross-examiner is not only permitted to delve into the witness' story to test

the witness' perceptions and memory, but the cross-examiner has traditionally been allowed

to impeach, i.e., discredit, the witness." Id. at 316. "[T]he exposure of a witness' motivation

in testifying is a proper and important function of the constitutionally protected right of

cross-examination." Id. at 316-317.

Petitioner points to no clearly established Supreme Court jurisprudence condemning

similar cross-examination of a criminal defendant.  The evidence of Petitioner's guilt of the

murder offense was substantial, and the cross-examination questions on which Petitioner

relies comprised only a brief portion of the Petitioner's four-day trial.  Even assuming that

the cross-examination questions were improper, Petitioner has not shown that the questioning

rendered his trial fundamentally unfair.  The OCCA's rejection of this claim was not contrary

to or an unreasonable application of the prevailing Donnelly standard, nor was the OCCA's

18

decision an unreasonable determination of the facts in light of the evidence presented at Petitioner's trial.  Accordingly, Petitioner is not entitled to relief as to this claim.

VI. Prosecutorial Misconduct in Closing Argument

In ground three, Petitioner contends that the prosecutor's closing argument denied him a fair trial.  Petitioner specifically asserts (by photocopying a portion of the appellate brief he presented in his direct appeal) that "the prosecutor's closing argument impermissibly burdened [Petitioner's] right to be present at trial and to testify in his own behalf by inviting the jury to draw a baseless inference that [Petitioner] concocted his testimony to fit the testimony presented by the state." Response, Ex. 1, at 18.  Petitioner referred in his direct appeal to this statement by the prosecutor during closing argument:

> He used the word gun play.  But then in the witness stand he uses the word heat.  After having the benefit of hearing the testimony of Toejoe, now, he can tell you those same exact words.  Well, our witnesses didn't have the benefit of hearing each other testify."

(TR vol. IV, at 100).  The OCCA rejected this claim of misconduct and explained that "[t]he 'tailoring' comment in the prosecutor's closing argument met no objection at trial, limiting this Court's review in Proposition 3 to plain error.  Finding no plain error, this proposition is also denied." Response, Ex. 4, at 2.  The OCCA cited to its previous decision in Hooks v. State, 19 P.3d 294, 314-315 (Okla. Crim. App. 2001).  In Hooks, a capital case, the OCCA reviewed a similar assertion of prosecutorial misconduct in which the appellant asserted "the prosecutor should not have argued in closing that Hooks's presence at trial allowed him to hear the State's evidence and then create a story to fit it." Id. at 315.  The OCCA noted in

Hooks that the Supreme Court in Portuondo v. Agard, 529 U.S. 61 (2000), had "recently found this argument was not an impermissible comment on a defendant's right to testify, or an infringement on his right to confront witnesses or on the requirement he be present at trial," and the OCCA rejected the claim.  Hooks, 19 P.3d at 315.

The Supreme Court's decision in Portuondo provides clearly established federal law concerning the issue raised by Petitioner.  In Portuondo, the Court reviewed a similar contention raised by the habeas petitioner that "the prosecutor's comments on his presence and on the ability to fabricate that it afforded him unlawfully burdened his Sixth Amendment right to be present at trial and to be confronted with the witnesses against him, ..., and his Fifth and Sixth Amendment rights to testify on his own behalf." Portuondo, 529 U.S. at 65. The Court refused to condemn the prosecutor's remarks during closing argument and rejected the petitioner's assertion that the comments violated his constitutional rights to testify and be present at trial, reasoning that "[a] witness's ability to hear prior testimony and to tailor his account accordingly, and the threat that ability presents to the integrity of the trial, are no different when it is the defendant doing the listening.  Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate - and indeed, given the inability to sequester the defendant, sometimes essential - to the central function of the trial, which is to discover the truth." Id. at 73.

The OCCA's rejection of Petitioner's claim of prosecutorial misconduct directed at similar comments of "tailoring" was not contrary to or an unreasonable application of the

20

Supreme Court's decision in <u>Portuondo</u>, <u>supra</u>.  Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

VII. <u>Jury Instructions on Self-Defense</u>

Petitioner contends in ground four that the jury instructions given at his trial regarding his defense of self-defense violated his constitutional right to due process.  Petitioner asserts (by again photocopying a portion of the brief he presented in his direct appeal presenting the same claim) that Oklahoma's uniform jury instructions do not include instructions with respect to an exception to the common law rule that an original aggressor loses the right of self defense.  Petitioner asserts that his defense fell within this exception for "a nondeadly aggressor who is met with deadly force."  Petitioner asserts that the instructions on first degree manslaughter in the "heat of passion" also failed to adequately portray his "imperfect" theory of self-defense, and "the jury should have been instructed that if they believed he was the original aggressor but that he was otherwise acting in lawful self defense ... that they should find him guilty of manslaughter, and not murder."

In rejecting this identical claim in Petitioner's direct appeal, the OCCA found that Petitioner did not object to the jury instructions given at his trial[3] and that as a result the OCCA's review was limited to a determination as to whether plain error occurred. Response, Ex. 4, at 2-3.  The OCCA found that the trial court instructed the jury using uniform jury

_____

[3]Petitioner did not challenge the jury instructions given at his trial or submit requested jury instructions that were not given.  (TR vol. IV, at 78).

instructions on the offenses of murder in the first degree, manslaughter in the first degree, and self defense, and that "[t]hese instructions adequately permitted the jury to consider [Petitioner's] theory of defense." Response, Ex. 4, at 2-3. Thus, the court found that no plain error occurred in the trial court's instructions to the jury. Id. at 3.

Petitioner does not rely on clearly established federal law in support of his claim. Rather, Petitioner relies solely on state court precedent. It is well established that the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, laws, or treaties. E.g., Mabry v. Johnson, 467 U.S. 504, 507 (1984); Pulley v. Harris, 465 U.S. 37, 41 (1984); Smith v. Phillips, 455 U.S. 209, 221 (1982); Brinlee v. Crisp, 608 F.2d 839, 843 (10th Cir. 1979), cert. denied, 444 U.S. 1047 (1980). In this regard, the Supreme Court has stated that "[f]ederal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith, 455 U.S. at 221. "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is 'whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process.'" Middleton v. McNeil, 541 U.S. 433, 437 (2004)(quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)(internal quotation omitted)). "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U.S. 141, 146-147 (1973). "If the charge as a whole is ambiguous, the question is whether there is a 'reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.'" Middleton, 541 U.S. at 437 (quoting

Estelle, 502 U.S. at 72)(internal quotation omitted)).

In Oklahoma, "the right of self-defense cannot be invoked by an aggressor or by one who voluntarily enters into a difficulty armed with a deadly weapon, no matter how great his or her peril becomes." Ruth v. State, 581 P.2d 919, 922 (Okla. Crim. App. 1978). See Le v. Mullin, 311 F.3d 1002, 1027 (10th Cir. 2002)("In Oklahoma, self-defense is not available to an aggressor."), cert. denied, 540 U.S. 833 (2003).  Nevertheless, "[a] homicide may be reduced from murder to manslaughter where the killing was done because the slayer believed that he was in great danger, even if he was not warranted in such belief or where the slayer although acting in self-defense was not himself free from blame." Wood v. State, 486 P.2d 750, 752 (Okla. Crim. App. 1971).  Considering this distinction in the homicide and manslaughter offenses, the OCCA has recognized that where "a jury might conclude that the defendant's self-defense claim is 'imperfect,' and while not sufficient to negate culpability, at least sufficient to mitigate it .... instructions on heat-of-passion manslaughter may indeed be warranted." McHam v. State, 126 P.3d 662, 668 (Okla. Crim. App. 2005).

Petitioner admitted during his trial, and the majority of the prosecution witnesses testified consistently, that Petitioner was the aggressor in the confrontation with Long. Despite the fact that the defense of self-defense would appear to be precluded under Oklahoma law in light of the evidence presented at Petitioner's trial showing he was the aggressor, the jury was instructed on self-defense as well as the lesser-included offense of first degree heat-of-passion manslaughter.  Petitioner has not shown that the jury instructions given at his trial "'deprived him of fundamental rights guaranteed by the Constitution of the

United States.'" Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir.)(quoting Brinlee, 608 F.2d at 843), cert. denied, 525 U.S. 950 (1998). The OCCA's decision is not contrary to or an unreasonable application of clearly established Supreme Court jurisprudence, and Petitioner is not entitled to federal habeas relief concerning his claim.

## VIII. Cumulative Errors

In grounds five and ten, Petitioner asserts that cumulative errors denied him a fair trial. In ground five, Petitioner merely photocopies the portion of his appellate brief setting forth this same due process claim of cumulative error. Although Petitioner asserts a separate claim of cumulative error grounded in the Due Process Clause in ground ten, it appears that Petitioner is asserting the same claim of cumulative error in both grounds five and ten, and therefore the claims in grounds five and ten will be considered together. Cumulative error analysis "applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998), cert. denied, 526 U.S. 1025 (1999). Petitioner has not identified clearly established Supreme Court decisions addressing a similar due process claim of cumulative error. However, the Tenth Circuit Court of Appeals has recognized that there is a "general due process right to a fair trial that has been identified by the Supreme Court in [certain] contexts." Johnson v. Mullin, 505 F.3d 1128, 1148 (10th Cir. 2007)(citing Medina v. California, 505 U.S. 437, 449 (1992)(referring to due process right to a fair trial in the context of a defendant's competency to stand trial), pet. for cert. filed, 76 U.S.L.W. 3471 (Feb. 25, 2008)(No. 07-1110). In this case, no harmless errors have been found. Thus, the OCCA's decision was not contrary to,

or an unreasonable application of, the general due process right to a fair trial.  Petitioner is

not entitled to habeas relief concerning grounds five and ten.

 IX. <u>Newly-Discovered Evidence</u>

In ground six, Petitioner contends that evidence discovered after his trial warranted

a new trial.   Petitioner has merely copied, in large part, the argument presented by his

appellate counsel in a motion for new trial filed in Petitioner's direct appeal.  Response, Ex.

10.   In that motion, Petitioner argued that new evidence in the form of affidavits of

Petitioner's brother and another individual, Mr. Clark, who did not testify at Petitioner's trial

but was purportedly present at the time of the shooting of the victim, warranted a new trial.

In Mr. Clark's affidavit attached to the motion for new trial, Mr. Clark averred that he saw

the victim, Mr. Long, reach into his back pocket where he had a gun.  Response, Ex. 10.

Because the OCCA did not address Petitioner's motion for a new trial in it summary

opinion affirming his convictions, Petitioner requested rehearing to allow the court to

consider the motion, and the OCCA granted Petitioner's motion for rehearing. Response, Ex.

6.  The OCCA made the following factual findings in its order affirming the judgment and

sentence and rejecting the motion for new trial:

> [Petitioner] testified at trial that he confronted the deceased
> wanting to fight, armed with a loaded weapon himself at the
> time.  According to [Petitioner], the deceased told [Petitioner]
> that he had "heat" and would not fight. [Petitioner] testified he
> never saw the deceased produce a weapon, but believed he was
> reaching for a weapon. [Petitioner] drew his pistol, loaded a
> round in the chamber, and fired, fatally striking his adversary in
> the back.
> New testimony from a third party recently located by

[Petitioner's] brother tending to show the deceased was, in fact, armed at the time [Petitioner] confronted him could have no bearing on [Petitioner's] stated justification for firing his pistol. The credibility of [Petitioner's] stated belief that his opponent was armed, and the reasonableness of [Petitioner's] belief that armed conflict was imminent, are questions for the jury, but the actual truth of whether the deceased was armed is immaterial to [Petitioner's] defense here....Such testimony would, at most, tend to impeach the testimony of other eyewitnesses who observed no threatening gesture by the deceased, and saw [Petitioner] shoot him down as he turned to walk away.... The trial court properly instructed the jury on the circumstances that would justify [Petitioner's] killing in self-defense, and the circumstances in which [Petitioner's] killing would constitute first degree manslaughter rather than murder. [Petitioner] theorizes this must have been a close case. However, the jury by its verdict entertained no reasonable doubts of [Petitioner's] criminal intent and lack of justification when he opened fire; and further declined the option under the instructions to convict [Petitioner] of first degree manslaughter. The proffered newly discovered evidence creates no reasonable probability of a different outcome when considered with the evidence produced at trial, and therefore, the Motion for New Trial Based on Newly Discovered Evidence is DENIED.

Response, Ex. 6, at 3-4 (internal citations omitted).

"[F]ederal courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact," and, consequently, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera, 506 U.S. at 400, 404.   Although the Supreme Court recognized in Herrera that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial [might] render the execution of a defendant unconstitutional, and warrant federal habeas relief," the

26

Court noted that "the threshold showing for such an assumed right would necessarily be extraordinarily high" because of the adverse effect of such claims of actual innocence on the need for finality in capital cases and the burden such claims would place on states to retry cases "based on often stale evidence..." Id. at 417.  The Court also indicated in Herrera that an actual innocence claim would not be cognizable in a habeas proceeding unless other state avenues of relief, such as executive clemency, had been exhausted. Id.

Herrera's exception for actual innocence claims in capital habeas cases does not apply to Petitioner's case because Petitioner did not receive a death sentence.  Moreover, even if Herrera was interpreted to allow the assertion of an actual innocence claim in a non-capital habeas case, Petitioner has not shown that he has exhausted other available avenues for relief and Petitioner has not satisfied the "extraordinarily high" threshold showing necessary to warrant habeas relief.  Id.

The affidavit of Mr. Clark presented in support of Petitioner's motion for new trial in his direct appeal did not include new information that would have created an inference of Petitioner's actual innocence.  Rather, Mr. Clark averred in his affidavit that he was standing outside of the Eldorado Club, drinking, and heard Petitioner say to the victim, "Let's just fight like men."  Mr. Clark further averred that he saw the victim reaching into his back pocket, saw the victim had a gun in his pocket before Petitioner shot the victim, and saw "a little short guy" pick up the victim's gun after the shooting. Although the affidavit might have bolstered Petitioner's testimony that he saw the victim reaching toward his back pocket at the time of the shooting, Petitioner testified that he never saw a weapon in the victim's

hands before he shot the victim.  No witness testified that they saw a weapon in the victim's hands prior to the shooting.  Thus, the information in Mr. Clark's affidavit would not have supported a claim of actual innocence or even enhanced the credibility of Petitioner's testimony that he believed he was in imminent danger of harm at the time he pulled his gun and shot the victim.  At most, the information in the affidavit might have affected the jury's credibility determination regarding other prosecution witnesses, including Mr. Russell, who saw Petitioner shoot the victim as the victim was turning around and/or walking away from Petitioner.  Accordingly, the purported newly-discovered evidence does not satisfy the "extraordinarily high" threshold showing required to demonstrate Petitioner's "actual innocence" under Herrera, even assuming that Herrera's exception applies to Petitioner's non-capital murder conviction.  Additionally, Herrera recognized that any newly-discovered evidence of actual innocence "must be considered in light of the proof of [the] petitioner's guilt at trial." Id. at 418.  In this case, as found earlier, the evidence at Petitioner's trial provided substantial evidence of Petitioner's guilt of the first degree murder offense.  Petitioner has not shown that the OCCA's decision was contrary to, or an unreasonable application of, prevailing Supreme Court jurisprudence.  Petitioner is consequently not entitled to habeas relief concerning this claim.

X. Procedural Default

Petitioner asserts in ground seven that the trial court erred in failing to instruct the jury concerning an Oklahoma statute, Okla. Stat. tit. 22, § 12.1 (effective March 1, 2000), providing that persons convicted of certain felony offenses, including murder in the first

degree, must serve 85 % of their sentences before becoming eligible for parole.  In ground eight, Petitioner contends that he was denied effective assistance of counsel with respect to his trial.  In ground nine, Petitioner contends that he was denied due process as a result of the Oklahoma City Police Department's failure to secure the "crime scene."

Petitioner did not raise these claims in his direct appeal.  Petitioner first asserted these claims in his application for post-conviction relief, and the district court and OCCA refused to review the merits of the claims due to Petitioner's failure to raise the claims in his direct appeal.  On habeas review, federal courts will not review claims that have been defaulted in state courts on an independent and adequate state procedural ground, unless the petitioner demonstrates cause for the default and actual prejudice, or alternatively demonstrates a fundamental miscarriage of justice.  Bousley v. United States, 523 U.S. 614, 622 (1998); Sawyer v. Whitley, 505 U.S. 333, 338-339 (1992); Coleman v. Thompson, 501 U.S. 722, 750 (1991); Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998).

"'A state court's finding is considered independent if it is separate and distinct from federal law.'"  Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995)(quoting Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994), cert. denied, 515 U.S. 1135 (1995)(internal quotations omitted)).  "'A state court's finding is deemed to be adequate if it is applied evenhandedly; that is, if it is strictly or regularly followed.'"  Id. (quoting Brecheen, 41 F.3d at 1353)(internal quotations omitted).

Generally, the OCCA's application of its well-established procedural bar rule in denying post-conviction relief is both independent of federal law and an adequate state

ground for the court's decision. See Johnson v. Champion, 288 F.3d 1215, 1227 n. 3 (10th Cir. 2002); Duvall v. Reynolds, 139 F.3d 768, 797 (10th Cir.), cert. denied, 525 U.S. 933 (1998). As to Petitioner's claims in grounds seven and nine, the OCCA's application of its procedural bar rule to deny Petitioner's post-conviction appeal is an independent and adequate state ground for the decision. Petitioner must therefore show cause and prejudice or a fundamental miscarriage of justice in order to obtain federal habeas review of the merits of these procedurally defaulted claims.

An exception to the procedural default doctrine is applied with respect to an Oklahoma habeas prisoner's procedurally-defaulted claim of ineffective assistance of counsel, like the claim of ineffective assistance of trial counsel asserted by Petitioner in ground eight. Oklahoma's procedural bar rule is an adequate basis for the OCCA's decision not to review a claim of ineffective assistance of trial counsel so long as the state's procedures (1) allow the petitioner an opportunity to consult with separate counsel on appeal in order "to obtain an objective assessment of trial counsel's performance" and (2) either the claim could have been resolved on the trial record alone or the state provided a procedural mechanism on direct appeal for the petitioner to adequately develop the factual basis of the ineffective assistance claim. Cannon v. Mullin, 383 F.3d 1152, 1172-1175 (10th Cir. 2004), cert. denied, 544 U.S. 928 (2005). Accord, Miller v. Champion, 161 F.3d 1249, 1252 (10th Cir. 1998). The Oklahoma procedural bar "will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claims can be resolved on the trial record alone. All other ineffectiveness claims are procedurally

barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied." <u>Snow v. Sirmons</u>, 474 F.3d 693, 726 n. 35 (10th Cir. 2007).

In this case, Petitioner had separate appellate counsel.  Petitioner contends that his trial counsel provided constitutionally ineffective assistance when he failed to request a jury instruction concerning parole eligibility for a murder conviction under Oklahoma law. Because Petitioner asserts that his trial counsel failed to object in order to preserve certain unidentified issues for appeal, Petitioner may also be asserting that his trial counsel provided constitutionally ineffective assistance when he failed to object to the prosecutor's closing argument and to the instructions given the jury regarding Petitioner's defense of self-defense. All of these ineffective assistance claims could be resolved on the basis of the trial record alone.[4]  Accordingly, the OCCA's procedural bar rule is an adequate ground for the court's

---

[4]In Petitioner's reply brief, Petitioner asserts that he has "discovered that his [trial] attorney was having a substance abuse problem, and has admitted his addiction to the Bar Association." Petitioner's Reply, at 8.  Petitioner did not assert this as a basis for his ineffective assistance claim in his state court post-conviction application or in his Petition filed herein.  Petitioner's attempt to amend his Petition with this claim is unavailing, and the newly-asserted claim of ineffective assistance will not be addressed herein.  Moreover, even assuming that an order directing Petitioner to exhaust this new claim of ineffective assistance of trial counsel would be futile, and the claim is therefore technically exhausted, and even assuming that federal habeas review of the merits of the claim is not precluded by Petitioner's procedural default of this claim, the claim has no merit. Petitioner's only support for his claim of ineffective assistance due to a substance abuse problem is a newspaper article in which it was reported that Mr. Albert, Petitioner's retained trial counsel, admitted he had a substance abuse problem and that a defendant, Keary Lamar Littlejohn, represented by Mr. Albert at his trial argued in his appeal that Mr. Albert failed to interview witnesses and obtain expert testimony that could have helped the defendant's capital murder case. Ultimately, based on a stipulation of the State and Mr. Littlejohn's appellate counsel, the OCCA concluded that Mr. Littlejohn was denied effective assistance of counsel in the sentencing stage of his capital trial and remanded the case for resentencing. <u>Littlejohn v. State</u>, __ P.3d __, 2008 WL 786516 (Okla. Crim. App. Mar. 26, 2008).  In view of the stipulation of the parties, the OCCA did

decision in Petitioner's post-conviction appeal, and Petitioner must show cause and prejudice or demonstrate a fundamental miscarriage of justice in order to obtain federal habeas review of this defaulted Sixth Amendment claim.

"[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [appellate] counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). See Coleman, 501 U.S. at 753 (cause must be "something external to the petitioner, something that cannot fairly be attributed to him....").

Petitioner asserts that "these issues could have and should have been ... raised on direct appeal...." Petitioner's Reply, at 10.  Construing this statement as an assertion that ineffective assistance of appellate counsel provides cause for his procedural default, "[a]ttorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default." Hickman, 160 F.3d at 1272.

---

not address Mr. Littlejohn's contention that Mr. Albert's substance abuse problems contributed to his ineffective assistance of counsel. Id. at * 8 n. 7.  Petitioner has not specifically alleged that his trial counsel's actual performance in connection with Petitioner's criminal case was adversely affected by substance abuse problems.  Thus, with respect to Petitioner's general claim that his trial counsel suffered from substance abuse problems, Petitioner has not shown that his trial counsel provided constitutionally ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 689 (1984)("Judicial scrutiny of counsel's performance must be highly deferential" and "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Further, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...."); State ex rel. Oklahoma Bar Ass'n v. Albert, 163 P.3d 527 (Okla. 2007)(attorney admitted substance abuse problem beginning in March and April of 2005, he was suspended from the practice of law, he underwent rehabilitation treatment for substance abuse, and he was reinstated to practice law by order entered May 2007).

In denying Petitioner's post-conviction appeal in which he asserted the same claims that he urges in grounds seven, eight, and nine of the Petition, the OCCA found that Petitioner had procedurally defaulted these claims by failing to raise them in his direct appeal and that "[t]he record presented on appeal contains no explanation for Petitioner's failure to raise these claims on direct appeal." Response, Ex. 8. Petitioner did not clearly assert an independent claim of ineffective assistance of appellate counsel in his post-conviction appeal. Petitioner's assertion of ineffective assistance of counsel was directed solely to the performance of his trial counsel, and the OCCA did not address the merits of a Sixth Amendment claim of ineffective assistance of appellate counsel. Consequently, Petitioner has not exhausted his claim of ineffective assistance of appellate counsel. See Bland v. Sirmons, 459 F.3d 999, 1011 (10th Cir. 2006)("A claim has been exhausted when it has been 'fairly presented' to the state court.")(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Nevertheless, under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

To establish "cause" sufficient to overcome the procedural bar based on ineffective assistance of appellate counsel, and to establish that he received constitutionally ineffective assistance of appellate counsel, Petitioner must satisfy both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668 (1984); that is, he must show that his appellate attorney's representation fell below an objective standard of reasonableness and that counsel's error(s) prejudiced the Petitioner. Strickland, 466 U.S. at 687. Prejudice is shown

only where there is a reasonable probability that if the error(s) had not occurred the result of the appeal would have been different. Id. "Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: '[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997)(quoting Strickland, 466 U.S. at 689). "Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the error." Id. Accord, Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689.

The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing Jones v. Barnes, 463 U.S. 745, 751 (1983)). "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." Jackson v. Shanks, 143 F.3d 1313, 1321 (10th Cir.), cert. denied, 525 U.S. 950 (1998). See Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999)(if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance). If an issue that appellate counsel failed to raise has merit, the court must determine whether counsel's failure to raise the issue was deficient and prejudicial. Hawkins, 185 F.3d at 1152.

> For example, counsel's failure to raise a "dead-bang winner" on appeal - an issue that is both obvious from the trial record, and one which would have resulted in reversal on appeal - constitutes ineffective assistance....When counsel omits an issue under these circumstances, counsel's performance is objectively

> unreasonable because the issue was obvious from the trial
> record, and the omission is prejudicial because the issue
> warranted reversal on appeal.

Id. (citation omitted).  It is the habeas petitioner's burden to prove that his or her appellate

counsel omitted a "dead-bang winner." Walker v. Gibson, 228 F.3d 1217, 1237 (10th Cir.

2000), cert. denied, 533 U.S. 933 (2001).   In other words, "[i]f the omitted issue is so plainly

meritorious that it would have been unreasonable to winnow it out even from an otherwise

strong appeal, its omission may directly establish deficient performance...." Cargle v. Mullin,

317 F.3d 1196, 1202 (10th Cir. 2003).  If the omitted issue "has merit but is not so compelling

... [the court must assess] ... the issue relative to the rest of the appeal, and deferential

consideration must be given to any professional judgment involved in its omission; of course,

if the issue is meritless, its omission will not constitute deficient performance." Id.  See

Hawkins, 185 F.3d at 1152 (if omitted issue is meritless, then counsel's failure to raise it on

appeal is not constitutionally ineffective assistance).

        Petitioner's procedurally-defaulted claim in ground seven of the Petition is directed

to the jury instructions given at his trial.  Petitioner contends that the jury should have been

instructed to consider the effects of Okla. Stat. tit. 22, § 12.1 (effective March 1, 2000),

providing that persons convicted of certain felony offenses, including murder in the first

degree, must serve 85 % of their sentences before becoming eligible for parole.  Although

the OCCA found that this claim was procedurally defaulted in Petitioner's direct appeal, the

OCCA alternatively addressed the merits of this claim and found that it had no merit and did

not entitle Petitioner to relief in light of the court's decision in Anderson v. State, 130 P.3d

273, 283 (Okla. Crim. App. 2006). Response, Ex. 8.  Consequently, Petitioner has not shown that his appellate counsel provided constitutionally deficient assistance by failing to assert this claim in Petitioner's direct appeal.

In ground eight, Petitioner presents a procedurally-defaulted claim of ineffective assistance of trial counsel.  The basis for Petitioner's claim of ineffective assistance of trial counsel is not entirely clear.  Petitioner contends in his brief in support of his Petition that "[t]rial counsel failure [sic] to object to issue that could have been preserve [sic] for appeal ... prejudiced the petitioner of his fundamental right to a fair trial." Brief in Support, at 35. Assuming Petitioner is contending that his defense attorney provided ineffective assistance by failing to object to the prosecutor's closing argument and by failing to object to the jury instructions or offer jury instructions with respect to his defense of self-defense, Petitioner's appellate attorney raised the underlying claims that the prosecutor's closing argument constituted misconduct and that the jury instructions given with respect to his defense of self-defense were not adequate.  The OCCA addressed the merits of these claims albeit under a "plain error" standard and rejected these claims.  Petitioner has not shown that his appellate counsel's failure to raise a claim of ineffective assistance of trial counsel based on these underlying claims was objectively unreasonable assistance under the circumstances.

In ground nine, Petitioner asserts that the Oklahoma City Police Department's failure to secure the "crime scene" resulted in the loss of evidence, thus violating Petitioner's right to a fair trial.  Petitioner's procedurally-defaulted claim rested on the Supreme Court's decision in Arizona v. Youngblood, 488 U.S. 51 (1988), in which the Supreme Court held

that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 58.   Petitioner does not identify what "evidence" he alleges was not secured at the scene of the homicide.   If Petitioner is referring to the affidavit of Mr. Clark that was presented with his motion for new trial, Mr. Clark averred in his affidavit that he saw an individual take a gun from the victim after the shooting.   However, Petitioner has not demonstrated that police officers' bad faith caused the loss of any physical "evidence" that was potentially useful to his defense.   Moreover, the OCCA reviewed Mr. Clark's affidavit in connection with Petitioner's motion for a new trial and determined that the information in Mr. Clark's affidavit created no reasonable probability of a different outcome at the trial.   Accordingly, Petitioner has not shown that his appellate counsel provided objectively unreasonable assistance in failing to assert this claim in Petitioner's direct appeal.

Because Petitioner has not shown that he received constitutionally ineffective assistance of appellate counsel, Petitioner has not shown cause for his state court procedural default of this claims asserted in grounds seven through nine.

Because Petitioner has not established "cause and prejudice" sufficient to excuse his failure to present these defaulted claims in his direct appeal, Petitioner may obtain federal habeas review of his defaulted claims "only if he falls within the 'narrow class of cases ... implicating a fundamental miscarriage of justice.'" Schlup v. Delo, 513 U.S. 298, 314-315 (1995)(quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)).   Petitioner has not alleged that a fundamental miscarriage of justice would result from the court's failure to review the

37

merits of his procedurally defaulted claims.  The record shows that substantial evidence of Petitioner's guilt was presented at trial.  Consequently, Petitioner has not demonstrated that the fundamental miscarriage of justice exception should apply to excuse his state court procedural default of the claims asserted in grounds seven, eight, and nine of the Petition, and federal habeas review of these procedurally-defaulted claims is barred.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by __June 11th__, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein.  <u>Moore v. United States of America</u>, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___22nd___ day of ___May___, 2008.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE